IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY BURTON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 09-2684 |
| TELEFLEX, et al. | : | |

**MEMORANDUM**

Ludwig, J.                                                                                                November 2, 2011

This is an age discrimination case. Jurisdiction is federal question. 28 U.S.C. § 1331.

According to the amended complaint, plaintiff Mary Burton had been employed by defendant Teleflex[1] as Vice-President of New Business Development under a two-year employment agreement when she received a letter of termination. The termination was alleged to have violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (Count I); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (gender discrimination) (Count II); and the Pennsylvania Human Relations Act, 43 Pa.Cons.Stat.Ann. § 951, *et seq*. (gender discrimination) (Count III). The complaint also included supplemental claims for breach of contract (Count IV), breach of the covenant of good faith and fair dealing (Count V), wrongful interference with contractual relations (Count VI), and defamation (Count VII).

Defendants moved for summary judgment and on September 29, 2010, an order was

---

[1] Defendants are Teleflex Incorporated, Teleflex Medical Incorporated, Specialized Medical Devices, Edward Boarini and Sean O'Neill.

entered granting judgment in their favor on all claims.[2] The basis for the September 29 order is as follows.

The summary judgment record[3] established the following. Plaintiff was the founder of both HDJ Company, which manufactured Swiss screw machine parts, and Specialized Medical Devices, which designed and assembled a cardiovascular punch. Deposition Testimony of Mary Burton, Exhibit "A" to defendants' memorandum, at 13, 15. In 2007, plaintiff sold HDJ and SMD to Teleflex. Burton N.T., at 16, 18-19, and at that time, entered into a two-year employment agreement with Teleflex, to terminate on April 11, 2009. Id., at 166; Employment Agreement, Exhibit "D", defendants' memorandum.[4] Plaintiff was 67 years-old when the employment agreement was executed. Burton N.T., at 56.

While employed at Teleflex, plaintiff's direct supervisor was Edward Boarini, Senior Vice-President and General Manager of Teleflex Medical OEM. Id., at 54. On June 3, 2008, plaintiff and Boarini attended a trade show for medical device suppliers in Manhattan. Id., at 59, 71. According to plaintiff, the following took place at the show:

---

[2] "Summary judgment is appropriate if and only if, after the evidence taken as a whole is construed in the light most favorable to the non-moving party, there remains no genuine issue of material fact." Rite-Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union, Local 1776, 595 F.3d 128, 131 (3d Cir. 2010) (citation omitted).

[3] The summary judgment record consists of the pleadings, documents produced in the course of discovery by both parties, answers to interrogatories, deposition transcripts, and the affidavit of Mary Burton, which is attached to her response to defendants' motion.

[4] The employment agreement permitted plaintiff to resign on thirty-days written notice. Exhibit "D", at 5. Upon resignation, plaintiff's rights to receive payment or other compensation would cease. Id., at 6. Defendant was also permitted to terminate plaintiff's employment on thirty-days written notice. Id., at 5.

. . . and I came up to Ed and I said, I asked him when he wanted to get together because he had talked to me on the phone the previous Friday and mentioned that he wanted to meet with me.

So when I got there I went to him and asked him when did he want to get together and he couldn't really even look me in the face. He said, Oh, well, he was going to be really busy, he had all these customers he had to see, he didn't have time that day, he didn't think he would have any time the next day, he was too busy, and then he talked about maybe I can give you ten minutes or so on Thursday, and I said, you know, I made all my appointments to be later because I thought you were very specific about wanting to get together with me, and he was just kind of treating me like I wasn't even there and he was treating me like a useless old woman and just like I wasn't there, and he couldn't come up with any answer. It was like what do you mean I want to see you.

I mean, he just was pretty much just trying to get rid of me. And I finally pressed it, I said, Are you asking for me to resign? Do you want me to resign? That's what I said to him. Do you want me to resign?

He said, Oh, no, no, we want you here for a long time to come and he was like, Oh no, no, that's not what I mean at all. We need you. We want you for a long time.

And I don't know if too much more happened right at that moment, but I started to walk away and shortly thereafter he said to me, he said, I think you should think about that.

Burton N.T., at 61.

Boarini's account of the conversation:

. . . I had gone there with every intention to try to have a dialogue with Mary Burton and determine what she wanted to do with the business because she had not had any progress on her performance objectives or any kind of dialogue. And within a few minutes of talking to her about setting up a time to have that conversation, she resigned. . . .

She asked me if I wanted her to resign. I said, No. Wait. Let's talk through this. Let's have a dialogue. Let's understand what we can do because we knew - I felt the relationship with her was not working to the betterment of the business.

3

> And twice she said, Do you want me to resign? And I said, No. The third time is when I said, Maybe you should think about retiring. That's when she decided to resign.

Deposition Testimony of Edward Boarini, Exhibit "E", defendants' memorandum, at 90-91.

Plaintiff and Boarini agree that she did not submit a written resignation. Burton N.T., at 66; Boarini N.T., at 91. Boarini later talked to other Teleflex employees who said that plaintiff had told them she had resigned. Boarini N.T., at 143 ("And the next thing I heard was that from other people that she was telling them she had resigned."). See also Deposition Testimony of Jack Farmer Fulton, Exhibit "G", defendants' memorandum, at 45 ("Mary said Ed Boarini didn't have the guts to fire me, so I resigned."); Deposition Testimony of David T. Faris, Exhibit "H", defendants' memorandum, at 65. ("Q. When did you first learn that Mary was not longer working at SMD? A. I learned that through Mary herself at a medical show where she told me that she resigned from the company. Q. Are you sure she didn't say she was asked to resign? A. I am very sure.").

On June 16, 2008, after Boarini advised Sean O'Neill, Vice-President, Global Human Resources of Teleflex Medical, that plaintiff had resigned, O'Neill sent plaintiff a letter formally accepting her resignation. June 16, 2008 letter, Exhibit "I", defendants' memorandum.[5] ("Specialized Medical Devices, LLC (the Company) has accepted your

---

[5] Plaintiff and O'Neill did not know each other well. Plaintiff: "wouldn't know him if he walked into the room," and "I don't know Mr. O'Neil other than I think I met him once." Burton N.T., at 103-04, 119. O'Neill: "I didn't know Mary." Deposition Testimony of Sean O'Neil, Exhibit "F" to defendants' memorandum, at 147. O'Neil also did not know plaintiff's age. Id., at 179.

resignation as Vice-President of New Business Development.")

Upon receipt of the letter, plaintiff contacted her son, and then her attorney and showed it to them. She did not believe she had resigned, Burton N.T., at 100-02, but, to the contrary, that she had been fired. Id., at 103. She did not, however, communicate with anyone at Teleflex. Id., at 101, 104-05 ("I didn't write anything, I didn't e-mail anything, I didn't see anybody," and "Well, I know I never talked to anybody at Teleflex. . . . I didn't initiate calls [to SMD]"). She also did not return to work at Teleflex. Id., at 87. Her attorney was in contact with Teleflex to negotiate the terms of her separation from the company, but those negotiations were unsuccessful.[6] Id., at 177-80.

On November 24, 2008, plaintiff's current litigation counsel sent Teleflex a copy of a Charge of Discrimination filed with the EEOC and requested the return of her personal property. On June 13, 2009, plaintiff commenced this action.

Also on June 16, 2008, Boarini e-mailed Teleflex employees to advise them of plaintiff's separation from the company. June 16, 2008 Boarini e-mail to employees, Exhibit "L", defendants' memorandum. (Plaintiff "ha[s] decided to pursue other opportunities. We want to thank Ed, Mary and Heidi for their many contributions and wish them the best in their future endeavors."). Also on that date, Boarini sent a letter to SMD customers advising that plaintiff "ha[d] decided to leave the company to pursue other opportunities." June 16,

---

[6] Although the employment agreement provided that plaintiff would not be entitled to further compensation upon resignation, the June 16, 2008 letter offered plaintiff a severance payment of six-months base salary in exchange for an extension of the non-compete and non-solicitation periods set forth in the employment agreement. Exhibit "D"; Exhibit "I".

2008 Boarini letter to customers, Exhibit "M", defendants' memorandum.

## Age and Gender Discrimination

The amended complaint alleges that Teleflex discriminated against plaintiff on the basis of her age and sex and ultimately terminated her employment. Amended complaint, Counts I through III. Inasmuch as there is no direct evidence of discrimination, the familiar McDonnell Douglas burden-shifting syllogism applies. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Sarullo v. United States Postal Service, 352 F.3d 789, 797-98 (3d Cir. 2003). Under this analysis, plaintiff bears the initial burden of establishing a prima facie case. Fuentes v. Perkasie, 32 F.3d 759, 763 (3d Cir. 1994). If plaintiff does so, the burden shifts to defendants to "articulate some legitimate nondiscriminatory reason for 'plaintiff's termination.'" McDonnell Douglas, supra, at 802; Fuentes, supra, at 763. Once this burden is satisfied, it shifts back to plaintiff to establish that defendants' proffered reason was a pretext for discrimination and was not the real reason for the unfavorable action. McDonnell Douglas, supra, at 804.

Here, according to defendants, plaintiff has not stated a *prima facie* case for age or gender discrimination because she cannot show that her separation from Teleflex occurred under circumstances giving rise to an inference of discrimination.[7] Additionally, defendants

---

[7] It is undisputed that plaintiff, as a 70-year-old woman, was a member of a protected class.

The evidence, particularly plaintiff's conduct after receipt of the June 16, 2008 letter, weighs in favor of a finding that plaintiff resigned, even viewing the evidence in the light most favorable to plaintiff. Even if there was a triable issue on this point, that would not preclude

argue that they had a legitimate, non-discriminatory reason for their conduct - plaintiff's resignation which they confirmed in writing.

For purposes of summary judgment, the *prima facie* case will be presumed and the burden shifts to defendants to produce evidence of a legitimate, non-discriminatory reason for its conduct. Simpson v. Kay Jewelers, 142 F.3d 639, 643-44 & n.5 (3d Cir. 1996). This burden is not great. Fuentes, 32 F.3d at 763. Here, defendants allege that plaintiff resigned from Teleflex. They refer to plaintiff's conversation with Boarini, in which she herself raised the possibility of her resignation, her subsequent comments to other employees that she had resigned, and her failure to make any effort to challenge that perception after receipt of the June 16, 2008 letter.

It then became plaintiff's obligation to prove that the reason advanced for her separation from Teleflex - that she resigned - was pretextual. Simpson, 142 F.3d at 611 & n.5. To satisfy this burden, plaintiff must produce "some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Kelly v. Drexel Univ., 907 F. Supp. 864, 876 (E.D. Pa. 1995), aff'd, 94 F.3d 102 (3d Cir. 1996) (citations omitted). This may include some evidence of "inconsistencies or anomalies that could support an inference that the employer did not act for the stated reasons." Blackburn v.

---

entry of summary judgment in favor of defendants. See infra.

United Parcel Service, 179 F.3d 81, 93 (3d Cir. 1999). It is not sufficient that the employer's decision was mistaken; plaintiff's evidence must show that the decision involved discriminatory factors. Fuentes, 32 F.3d at 765; Simpson, 142 F.3d at 644-45.

Plaintiff's position is that Boarini intended to terminate her employment, but she points to nothing in the record other than her own feeling or subjective belief that he disregarded her professionally or demeaned her because of her age. In her opinion, Boarini thought of her as "just like, you know, nothing." Burton N.T., at 63. Plaintiff states that Boarini failed to make eye-to-eye contact with her, and did not appreciate the contributions that she made. Id., at 63, 68-69. She offers no specific instances or comments by Boarini to suggest that any lack of regard, if it existed, was a result of ageism.

Additionally, she refers to the New York conversation in which she says that he told her to resign. Plaintiff's own testimony at deposition was that she was the one who raised the possibility of resignation, and that Boarini rejected it twice, stating at the end of the exchange that she "should think about that." Burton N.T., at 60-62. Boarini recalls that at the end of the exchange he said, "[m]aybe you should think about retiring." Boarini N.T., at 90-91. This is the only evidence in the record that even marginally supports plaintiff's claim that any discriminatory animus existed toward her.

Plaintiff also notes O'Neill's failure to verify her resignation before sending a letter accepting it. This is understandable because the purpose of the letter was to confirm the resignation - and plaintiff made no protest that the resignation had not occurred. Moreover,

as to O'Neill, the evidence is that he and plaintiff did not know each other, and that he did not even know how old she was.

Plaintiff also points to a meeting involving Boarini, a Teleflex human relations manager, and counsel prior to the New York convention. Plaintiff's memorandum, at 20; Teleflex privilege log, Exhibit "O", plaintiff's memorandum. The meeting is not described, but plaintiff surmises that its purpose was to determine how Boarini could "get plaintiff to tender her resignation from employment [so that] Teleflex would not be obligated to pay her severance benefits pursuant to the [employment agreement.]" Plaintiff's memorandum, at 20. This is speculation - there is no evidence in the record as to the purpose or content of the meeting.

None of those matters call into question Boarini's or O'Neill's belief that plaintiff resigned. Even construing the evidence in the light most favorable to plaintiff, there is no triable issue that discriminatory animus existed and was a moving factor behind Teleflex's acceptance of what it believed to be plaintiff's resignation. Her denial that she resigned is not supported by any evidence other than her self-serving statements made well after the Boarini conversation. Defendants are entitled to judgment on plaintiff's discrimination claims set forth in Counts I through III of the amended complaint.

### Breach of Contract

Plaintiff's breach of contract claim against Teleflex, amended complaint, Count V, is that Teleflex did not give her thirty-days written notice upon terminating her without cause

- and then not paying her severance benefits as provided in the employment agreement. Id.; Burton N.T., at 132-33, 137; Exhibit "D", defendants' memorandum, at 5, 6. This claim must be rejected because the evidence of record, viewed in the light most favorable to plaintiff, is that she resigned her position.

### Breach of Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the covenant of good faith and fair dealing, amended complaint, Count V, is that Teleflex "induce[d] plaintiff to enter into a transaction to sell her valuable companies with the false promise of continued employment." Amended complaint, ¶ 69. Her claim appears to be that, but for her separation from Teleflex in 2008, she would have remained with the company even beyond the two- year term set forth in the employment agreement.[8]

The record reflects that in April 2007, plaintiff, while represented by counsel, engaged in negotiations that resulted in her sale of HDJ and SMD to Teleflex and the execution of an employment agreement setting forth the terms of plaintiff's employment at Teleflex. The employment agreement is clear with respect to the term of employment: "Unless sooner terminated in accordance with Section 10 hereof, the term of this Agreement shall commence on the Effective Date and shall continue until the second (2nd) anniversary of the Effective Date. ("the Term"). Exhibit "D", defendants' memorandum, at 2. Plaintiff acknowledged

---

[8] In her opposition, plaintiff asserts that "[t]he employment agreement promised in the minimum two years employment but the intention was to extend employment beyond the two years." Plaintiff's memorandum, at 6. To the extent that Count V is simply a recasting of plaintiff's breach of contract claim, see discussion of Count IV, supra.

the two-year term at her deposition. Burton N.T., at 26, 166 ("[w]e did enter into a two-year thing [because] that was what was negotiated between their lawyer and our lawyer at the time."). See also Deposition Testimony of John Sickler, Senior Director of Corporate Development, who assisted in the acquisition of HDJ and SMD by Teleflex, at 61 ("I know the two years. That's what I remember."). No evidence suggests that employment beyond the two years reflected in the Employment Agreement was contemplated. Defendant's conduct did not result in the lack of an extension of the term.

### Wrongful Interference With Contractual Relations

Defendants Boarini and O'Neill deny the claim against them for wrongful interference with plaintiff's contractual relationship with Teleflex, amended complaint, Count VI, because the record establishes that at all times they acted solely as agents of Teleflex and therefore cannot be considered third parties. Under Pennsylvania law, a tortious interference with contractual relations claim requires proof of "(1) the existence of a contractual . . . or economic relationship between plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship . . . ; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009). A plaintiff cannot prevail "where the claim is by one party against the other party to the contract and not against

a third party interloper who has interfered with the contractual relationship." Fregara v. Jet Aviation Bus. Jets, 764 S. Dupp. 940, 955 (D.N.J. 1991) (quotation omitted).; A. Valey Engineers, Inc. v. The Rouse Co., 1989 WL 89984, at *11 (E.D. Pa., Aug. 19, 1989) ("[E]ssential to a right of recovery . . . is the existence of a contractual relationship between the plaintiff and a 'third person' other than the defendant.")(citation omitted).

The amended complaint avers that Boarini and O'Neill were "agents" of Teleflex. Amended complaint, ¶¶ 10, 11. Moreover, their conduct - including what was specifically cited by plaintiff in her opposition to defendants' motion, see plaintiff's memorandum at 26 - occurred solely within the context of their positions at Teleflex. Boarini's conversations with O'Neill regarding his conversation with plaintiff and others at the convention that led him to believe that plaintiff had resigned, O'Neill's reliance on Boarini's statements, and the issuance of the letter accepting plaintiff's resignation were undertaken by Boarini and O'Neill in the course of their employment. Plaintiff offers no explanation to the contrary. Boarini and O'Neill are agents of Teleflex, were not third parties, and therefore could not have been found liable for contractual interference.

### Defamation

Plaintiff asserts a defamation claim against all defendants. Amended complaint, Count VII. The amended complaint alleges that "[d]efendants published false statements that Plaintiff had performed poorly and that plaintiff had resigned and retired from employment,"

id., ¶ 78[9]. These statements purportedly "caused the Plaintiff to lose her career, tarnished the plaintiff's reputation and caused the plaintiff great emotional distress, embarrassment and anxiety as well as physical ailments." Id., ¶ 80. The specific statements are (1) O'Neill's June 16, 2008 letter to plaintiff accepting her resignation and (2) Boarini's June 16, 2008 letter to Teleflex employees and customers advising that plaintiff had left Teleflex. Defendants respond that (1) the O'Neill letter was published only to plaintiff, who showed it to her son and attorney; and (2) because the e-mail and letter sent by Boarini were not capable of defamatory meaning, and in any event, were protected by a qualified privilege.

The O'Neill letter: "Under Pennsylvania law, a defamation claim consists of seven elements, one of which is publication by the defendant. . . . In order to prove publication, plaintiff must show that the allegedly defamatory statement was communicated by the defendant to a third party." Mollick v. Beverly Enterprises, Inc., 1997 WL 634496, at *3 (E.D. Pa., Sept. 29, 2997) (citations omitted). Here, plaintiff admitted that only she received O'Neill's letter, which she showed to her son and attorney. Burton N.T., at 118-21. This does not evince publication as against O'Neill. See also Yetter v. Ward, 585 A.2d 1022, 1025 (Pa. Super. 1991) ("We hold that where the defamation action rests on the publication of an employment termination letter by the employer to the employee only, the requirement that the defamatory matter be published by the defendant is not met through proof of

---

[9] Plaintiff admitted at deposition that defendants did not publish any statements about her performance, Burton N.T., at 118-21. Only statements regarding her separation from Teleflex remain at issue.

compelled self-publication.")

As to the Boarini e-mails: two elements of a defamation claim are (1) the defamatory character of the communication; and (2) special harm resulting to plaintiff from the publication of the allegedly defamatory matter. 42 Pa.C.S.A. § 8343(a). It is for the court to determine whether a statement is capable of defamatory meaning. Smith v. School Dist. of Phila., 112 F.Supp.2d 417, 429 (E.D. Pa. 2000). A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him," or "if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001); Livingston v. Murray, 612 A.2d 443, 447 (Pa. Super. 1992). It is not enough that the statement annoy or embarrass the victim. Tucker v. Philadelphia Daily News, 848 A.2d 113, 114 (Pa. 2004).

The e-mail to Teleflex employees stated that plaintiff "ha[d] decided to pursue other opportunities. We want to thank Ed, Mary and Heidi for their many contributions and wish them the best in their future endeavors." Exhibit "L", defendants' memorandum. Similarly, the letter to customers stated that plaintiff "ha[d] decided to leave the company to pursue other opportunities." Exhibit "M", defendants' memorandum. These statements are not capable of blackening plaintiff's reputation or lowering her in the estimation of the community.

Indeed, the ending was that the statements did not harm plaintiff. During her

14

deposition, plaintiff described a party she had held at her home shortly after her separation from Teleflex to which former HDL and SMD employees were invited. While these employees expressed disbelief that she would have retired or resigned, this did not damage her and they continued to think highly of her. Burton N.T., at 113-14, 161. Moreover, within a year and a half after her separation form Teleflex, she admitted receiving two job offers for sales positions in the same industry, one in her hometown of Lancaster and one in Oregon. Id., at 10, 11, 182. Both companies, according to plaintiff, "knew her reputation" and "would have taken [her] at any time [she] was free." Id., at 172-73. Plaintiff was unaware of anything these companies may have heard regarding her separation from Teleflex to change their opinion of her.

The statements at issue are not capable of defamatory meaning, and did not cause harm to plaintiff's reputation or standing in the community.

BY THE COURT:


/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.